Ida Shatro OGLESBY, Appellant,

v.

VONDER HAAR CONCRETE COMPANY, Respondent.

No. 49880.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

James B. Herd and Deeba, DeStefano, Sauter & Herd, St. Louis, for appellant.

Walter F. Timm, James E. McDaniel, McDonald, Barnard, Wright & Timm, St. Louis, for respondent.

COIL, Commissioner.

Leroy Shatro was killed as a result of a cave-in of a dirt bank in an excavation where he was working as an employee of the St. Louis County Highway Department. His widow claimed $25,000 as damages for his wrongful death from respondent whose driver delivered ready-mixed concrete to the excavation site. We shall refer to the parties as they were designated below.

At the close of plaintiff's evidence, the trial court directed a verdict for defendant for the assigned reason that no negligence had been shown.

Plaintiff has appealed and here contends that the trial court erred in so ruling because the evidence considered favorably to her made the question of defendant's proximate negligence one for the jury.

■ We are of the opinion that the trial court correctly ruled for the reason that the record contains no evidence from which a jury reasonably could have found that defendant was negligent.

At a place on east-west Forder Road in St. Louis County about 300 yards west of north-south Telegraph Road, there was a 48-inch drainage pipe which ran from north to south under Forder Road (about five or six feet below its surface). Where the pipe emerged at the south side there had been a "head wall" for the purpose of holding the pipe in place. As we understand, the head wall is a concrete structure which is built around the end of a culvert pipe. The old head wall had become defective and a witness said it had "caved in." A county highway department crew had begun work on Monday, May 8, 1961, to break up and remove the remaining concrete from the defective head wall and had continued on Tuesday and Wednesday with other necessary labor, including the excavation of a surrounding area, in order that a concrete base (5 to 7 feet wide) for a new head wall could be poured. On Wednesday, the 10th, a hole approximately 20 to 25 feet long, 8 feet wide, and 10 to 12 feet deep had been excavated by means of a back hoe (a tractor with a scoop bucket on its front), apparently some chat had been placed on the bottom of the portion of the excavation on which the concrete footing was to be poured, and some steel beams had been placed to reinforce the concrete. During the night some dirt had fallen on the chat at the east end of the hole and, on the 11th, some of the crew were in the excavation removing that dirt (about four or five

wheelbarrows full). About the time they had finished, a small section of moist dirt caved in from the north wall of the excavation about three feet from the floor (about five gallon buckets full). The evidence showed that from May 4 through May 8 there had been 6.08 inches of rainfall at Lambert Field but no measurable rainfall on May 9 or 10. The excavation had been so dug that the center of the culvert pipe was midway between its west and east ends; the north wall was adjacent to the south edge of Forder Road and was straight up and down and not sloped in any degree whatever. There was no shoring or lateral support of any kind of the dirt sides of the excavation. The south side of the excavation was sloped to the south and afforded a means of egress for the men working therein. The dirt from the excavation had been piled in two piles, one at the east and one at the west end.

When the crew had just about completed the removal of the dirt from the small cave-in, the supervisor, who was sitting on the bank at the west end of the excavation, from which position he looked down into the hole, announced that the "concrete is here," loud enough for each of the crewmen to hear. One of the crew, Mr. Johnson, who was in charge of pouring the concrete, immediately left the excavation, went to Forder Road (a blacktop, 20 feet wide), where he observed defendant's (42,000 pounds with load) concrete truck approaching from the east. He indicated to the driver where the concrete was to be dumped. In response to Johnson's motions, defendant's driver went past the excavation about 50 feet, then started to back eastwardly, then swung the rear of his truck to the south, all in accord with Johnson's directions. As the truck was backing slowly, Johnson, as was his custom, was getting the chute attached to the rear of the truck ready for use. The truck came to a stop so that its closest part (overhang) was some 10 feet northwest of the north wall of the excavation and its rear tire closest to the excavation

was 12 to 15 feet away from the excavation and two to five feet north of Forder Road's center line. Within a few seconds after the truck stopped, another cave-in occurred in the same area as the last, of sufficient size to completely cover Shatro, who was in the process of leaving. All of the four crew members had been told to leave the excavation prior to the cave-in, and had been told more than once.

The reason Johnson stopped the truck just prior to the cave-in was that he wanted to determine how far the chute would reach; that would determine whether he would have the truck back closer to the excavation. The truck driver followed Johnson's instructions. At some time during the process of backing apparently the truck driver placed one foot on the truck's left running board and looked back to see whether Johnson was getting the chute arranged properly. There was evidence that some of the men standing in or leaving the excavation could have seen the truck as it was backing, but there was no evidence that the driver of the truck was able to see into or did see into the excavation.

A civil engineer, in answer to a hypothetical question, testified that while he could not say the cave-in would not have occurred had the truck not been there, the presence of the additional weight of the loaded truck in the immediate vicinity of the excavation increased the likelihood of a collapse, and thus was a contributing cause of the failure of the dirt bank.

The theory upon which plaintiff relies for recovery is not too well defined or developed in her brief, but probably this paragraph from the brief suggests the basis for her contention that the question whether defendant company, through it agent and servant, the driver of the concrete truck, was negligent was for the jury:

"Under the foregoing authority, if the defendant's driver in the present case ought to have anticipated that some injury to workmen in the Forder Road excavation

might occur as a result of the operation of his concrete truck near the edge of the excavation, he was bound to take such reasonable precautions as would protect them (and the decedent) from injury. It is the plaintiff's primary contention that common experience and the circumstances confronting the defendant's driver imposed upon him a duty to the decedent which he violated."

We have examined the cases cited by plaintiff. Other than those which state well-established general rules pertaining to the law of negligence, they are in nowise applicable to the facts of this case and no purpose would be served by reviewing them.

There are probably several sufficient reasons which support the trial court's ruling, but basically it seems apparent that under the circumstances disclosed by the foregoing statement of facts, before the truck driver could have been negligent he had to have known, either actually or constructively, both that the proximity of the truck to the excavation was likely to cause a cave-in and that it was likely that someone would be injured thereby. There were no facts in evidence to support either hypothesis. There was no showing that the truck driver or his employer, or anyone connected with defendant, had received any prior information as to the nature of the project or instructions concerning it, or had any knowledge of the purpose for which the concrete was to be used or even that there was an excavation or, if so, the type of excavation, or the degree of the slope of its walls, or whether proper shoring and lateral support had been provided; and there were no circumstances shown in evidence which reasonably could have been found to have put the truck driver on notice of a dangerous condition or situation. (In passing, we note that the truck never did get any closer to the ex-

cavation than was the traffic on Forder Road—the evidence showed that at the place in question only the north lane of Forder was being used because the south lane was blocked by the dirt from the excavation. The truck's rear tire, closest to the excavation, never did get south of Forder Road's center line.) Furthermore, the evidence was that the truck driver did exactly what Mr. Johnson directed him to do and that Mr. Johnson gave those directions in the presence of the county highway department supervisor. Likewise, there was no evidence from which the jury could have found that the truck driver knew or should have known that any persons were in the excavation at the time he backed his truck, or that, if there were, they were not supposed to be there or that it was unsafe for them to be there.

In short, there was no evidence in this case that defendant, through its driver-agent, did or failed to do any act which a jury reasonably could have found constituted a failure to use that degree of care that an ordinarily careful and prudent person would have used under the same or similar circumstances.

Defendant's motion, taken with the case, to dismiss the appeal for the alleged failure of plaintiff to comply with Civil Rule 83.-05, V.A.M.R. is overruled.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.