**Frankie R. PENN and Patsy Mae Penn, Plaintiffs-Appellants,**

v.

**COLUMBIA ASPHALT COMPANY, a Missouri corporation, Defendant-Respondent.**

**No. KCD 26184.**

Missouri Court of Appeals, Kansas City District.

July 1, 1974.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1974.

Application to Transfer Denied Oct. 14, 1974.

Roger D. Hines, Columbia, for plaintiffs-appellants.

Hendren & Andrae, Alex Bartlett, Jefferson City, for defendant-respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

SHANGLER, Judge.

The plaintiffs Frankie R. Penn and Patsy Mae Penn, his wife, appeal from an order for new trial in favor of defendant Columbia Asphalt Company after the return of jury verdicts of $32,000 for Frankie R. Penn for personal injuries and of $4,000 for Patsy Mae Penn for loss of services. The grant of new trial was for error in Instruction No. 2 on the burden of proof and in Instruction No. 4 on the claim of Patsy Mae Penn for loss of consortium. We reverse and remand for reinstatement of verdicts.

On June 30, 1965, at about 3:05 a. m., plaintiff Frankie Penn was driving a tractor-trailer rig in an easterly direction on Interstate 70 east of Columbia at a point approximately one mile east of Routes P and J. It was raining heavily with gusty winds. At that point the truck collided with a large roller and a spreading machine owned by defendant. The area of the collision was being resurfaced with asphalt by defendant under a contract with the State Highway Department. The roller and spreader were parked on the paved shoulder; they exhibited no lights although each carried a single warning flag. The cab of the tractor was virtually demolished, the construction equipment was heavily damaged and Frankie Penn severely injured.

At this point the roadway was 38 feet wide with two 12 foot driving lanes and adjacent paved shoulder on the south of the eastbound lanes. A drop-off of one-half inch or so separated and defined the shoulder from the normal highway pavement. At the time of the collision, the white lane markings had not yet been placed on the highway nor had the white chat used to differentiate the shoulder from the driving lanes been applied. Construction warning signs had been placed near the beginning of the project some 7 miles east of the point of collision. The plaintiff had made a run from St. Louis to Kansas City on the day before and had observed the paving in progress in the eastbound lanes of Interstate 70 east of Columbia.

The construction equipment had been parked at the scene by its operators the evening before when they had finished their work for the day. The operators originally had been joined as defendants, but at the close of all the evidence the claims against them were dismissed with prejudice by plaintiffs. The plaintiffs submitted their claims to the jury on the single theory that defendant Columbia Asphalt Company had negligently parked its equipment upon the roadway without sufficient warning lights.

On this appeal plaintiffs assert that Instruction No. 2 and No. 4 were free of error. Respondent disputes this contention and argues alternatively that, in any event, its motion for judgment should have been sustained and that the grant of new trial can be supported on other grounds preserved in its motion for new trial and briefed to this court.

We consider the alternative arguments of respondent in support of the new

trial order. The first, that respondent was entitled to its after-trial motion for judgment itself rests upon the alternative grounds that: (1) plaintiff Frankie R. Penn was contributorily negligent as a matter of law; (2) the evidence was insufficient to show that Columbia Asphalt Company was negligent or that any such negligence was the proximate cause of injury and damage to plaintiffs, and (3) the causes of action were barred by prior judgment. The first two contentions test the sufficiency of the evidence, therefore we augment the statement of facts already given. This we do in the light most favorable to the verdicts for plaintiffs. Fitzpatrick v. Federer Realty Company, 351 S. W.2d 673, 681 [2] (Mo.1961).

The run which culminated in collision began from the Kansas City terminal of plaintiff's employer, Yellow Transit. Frankie Penn was driving a rig 50 feet in overall length and somewhat more than 40,000 pounds in weight. The weather was stormy and driving was hazardous. The site of collision was slightly downgrade; as he started down after cresting a hill, Penn felt a gust of wind move the vehicle sideways, but he believed he was still on the roadway. [The testimony by Penn that the wind had been strong and gusty was confirmed by Patrolman Volkemer who found evidence at the scene of damage by strong winds.] At that time his speed was between 40 to 45, perhaps 50, miles per hour. As he attempted to straighten the direction of his rig, a yellow hulk [the roller] loomed in front of him some 70 to 75 feet ahead. He tried to avoid collision with the object but did not succeed. Penn testified that his lights, on low beam because of the rain, were in good working order and allowed him visibility of 175 to 200 feet. He acknowledged that he could not have stopped his rig within that distance, but that he had been proceeding on the assumption that there were no stationary objects on the roadway. The impact virtually demolished the cab of the tractor and upset the trailer so that it came to rest on its side upon the grassy slope south of the paved shoulder. The roller, which had been parked parallel to and about five feet south of the shoulder, was forced backwards into the spreader. Both pieces of equipment were a bright yellow, and as we have noted, neither had lights, but each exhibited a flag.

The investigating officer, Patrolman Volkemer, arrived at the scene just about 4:00 a. m., about an hour after the casualty. When he arrived, a large informational highway sign supported by two steel I-beams set in concrete, which had been installed just west of where the construction vehicles were parked and just south of the paved shoulder, had been shorn so that the northernmost post was torn from the ground. The southernmost post was bent but remained fast in the ground [The plaintiff driver neither recalled the sign nor having struck it.] Volkemer found dual wheel tracks in the soft earth just off the shoulder at a point 117 feet west of the sign which continued in a straight line and extended 20 to 30 feet west of the sign, at which point the ground appeared to be "pretty much chewed up". In this area, Volkemer testified, it appeared another set of wheels had come off the paved shoulder and widened out, veering southeasterly toward the sign. Volkemer concluded that the truck had hit the sign but the damage to the tractor had been so extensive that he could find no evidence of impact.

The respondent Columbia Asphalt Company does not question the rule that contributory negligence is usually for the jury, and that for it to appear as a matter of law, the evidence must clearly establish to reasonable minds without disagreement that the injury suffered by plaintiff was the result of failure to exercise due care for his own safety. Dalby v. Hercules, Inc., 458 S.W.2d 274, 277 [1] (Mo.1970). Respondent argues, rather, that Penn knew he was in a construction area and thus had no right to assume that the roadway was clear and could be safely

travelled, and that in the circumstances, Penn's concession that he was driving ahead of his lights convicts him of contributory negligence as a matter of law. The respondent acknowledges that Missouri has rejected inflexible application of the "assured clear distance rule" [1]. [Haley v. Edwards, 276 S.W.2d 153, 158 [1] (Mo. 1955)] but insists that the circumstances of this case demand the application of the doctrine. The respondent relies on numerous authorities for these related contentions and asserts that Trantham v. Gillioz, 348 S.W.2d 737 (Mo.App.1961) controls our decision.

■ In *Trantham,* the court found that a plaintiff who deliberately by-passed a well-marked detour, drove around a barricade to go upon a road which he knew was in process of completion and not yet open to the public, and at speeds of 60 to 70 miles per hour drove down the road into a two foot high dirt obstruction which completely blocked the road, was guilty of contributory negligence as a matter of law. The court gave this rationale, l. c. 741 [3]:

> Ordinarily a traveler rightfully upon a public highway may, in the absence of any notice to the contrary, assume or presume that the way ahead is clear and that it may be safely traveled at a reasonable speed. But this rule does not apply if the traveler knows, or should know, that the road is under construction, *especially if it is closed to public travel.* (Emphasis added)

And, although the same duty rests on a motorist on a street open to the public [Rohmann v. City of Richmond Heights, 135 S.W.2d 378, 383 [9] (Mo.App.1940)], the duty is more compelling where the motorist is in a place he has no right to be. *Trantham, supra,* 348 S.W.2d l. c. 742 [5]. A crucial issue in the determination of whether a motorist may assume a clear

way is whether the circumstances put him upon inquiry of the possibility of danger ahead. Metz v. Kansas City, 299 Mo.App. 402, 81 S.W.2d 462, 469 [4] (1935). In the expression of *Trantham,* 348 S.W.2d l. c. 741 [3], where the traveler knows, or should know, that the road is under construction, and especially if it is closed to public travel, the law imposes upon him a duty "to so manage his automobile that he may, by the exercise of care commensurate with the circumstances", avoid danger.

■ The respondent contends that under the *Trantham* rule, the conjoined circumstances of knowledge by Penn from the run of the previous day that the area was under repair, the sign warning of construction, the concession by Penn that he was driving ahead of his lights, the speed at which he operated his vehicle under hazardous conditions, and the movement of the vehicle off the paved shoulder some 117 feet west of the informational sign, conclusively bar Penn from recovery as a matter of law. On the facts and on principle, however, *Trantham* is not an apt precedent to defeat recovery by Penn.

The factual distinctions between *Trantham* and this case are significant: In *Trantham,* the roadway was closed to the public by a barricade and detour marked by numerous warning signs and lights; the motorist knew of these obstructions but gave them no heed, deliberately went upon the closed road and, although nighttime, drove at speeds up to 70 miles per hour on the interdicted way and struck a rise of dirt which had been installed across the highway to facilitate construction. In this case, on the other hand, the roadway was open [even during paving operations] thus Frankie Penn was in a place where he had a right to be; and although a highway sign some seven miles earlier had warned of construction ahead and directed careful

---

1. The essential statement of the rule is that a motorist must so manage the speed and control of his automobile as to be able to stop or avoid obstructions in the distance within which his headlights make them discernible. 60 C.J.S. Motor Vehicles § 201(9) p. 1023.

driving, the evidence does not require the inference that Penn—either by the speed or the manner of operation of the motor unit—deliberately disregarded that warning. Most pertinently, however, the rule in *Trantham* has no application to the merits of this appeal because Penn was not injured by a hazard of construction but by a hazard of traffic, a danger he was not duty-bound to have anticipated from his knowledge of the road repair. As in *Trantham,* so in each of the other authorities respondent cites on this point,[2] contributory negligence as a matter of law was found against a party injured by a hazard of construction—a road made unsafe by public work. Penn does not complain that his injury was caused by a condition of the road, however, but by road equipment carelessly parked at night without lights on a public highway in violation of the rules of the road.

■ We conclude as well that the assured clear distance rule, which does not fix an inflexible standard for negligence upon a motorist who drives at a speed which prevents him from stopping within the range of his visibility, has no application in circumstances where the driver has no reason to anticipate the presence of vehicles parked on a public way which he had a right to assume was clear and he could use safely. Thompson v. Byers Transportation Co., 362 Mo. 42, 239 S.W. 2d 498, 500 [5] (1951); Johnson v. Lee Way Motor Freight, Inc., 261 S.W.2d 95, 97 [2] (Mo.1953); Haley v. Edwards, *supra,* 276 S.W.2d l. c. 158 [1].

The respondent argues also that the contributory negligence of plaintiff is proved conclusively by the physical facts of the scene and by the evidence of his own witness, Patrolman Volkemer: that the inability of plaintiff to recall the informational highway sign, the 117 feet of tracks off the paved shoulder, and the destruction on the sign prove that Penn simply drove off the road and hit the sign causing the truck to veer back upon the road and hit the roller parked on the shoulder—facts which require the inference that Penn simply fell asleep at the wheel or that he failed to keep a lookout. While the evidence supports such an hypothesis, it was Penn's theory that the buffet of strong winds moved the trailer off the pavement, that he saw the yellow hulk about 75 feet away, and in his attempt to swerve, the trailer slid southeasterly, hit the sign and overturned while the tractor was striking the roller. This hypothesis, also, was supported by the evidence and was accepted by the jury and when we view the evidence which supports the verdicts most favorably to plaintiffs, as we must, we cannot conclude that Penn was contributorily negligent as a matter of law. Ruediger v. American Bus Lines, Inc., 426 S.W.2d 4, 10 [6–8] (Mo. banc 1967).

■ The respondent argues further that even if Penn was not contributorily negligent as a matter of law under the general traffic statutes, he owed an even more stringent duty under the Interstate Commerce Commission and Public Service Commission regulations which require an operator to exercise "extreme caution" when "hazardous conditions" such as adverse weather affect visibility or traction, and which provide also for the reduction of speed under such circumstances. The sense of the argument is that Penn was bound by these regulations to exercise a degree of care more strict than the highest degree of care. Respondent cites no au-

---

**2.** Oliver v. Hallett Construction Co., 421 F.2d 365 (8th Cir. (1970)) [a gravel stockpile in the center of the road]; Lyon v. Paulsen Bldg. and Supply, Inc., 183 Neb. 365, 160 N.W.2d 191 (1968) [excavation in the street]; Finkelstein v. Brooks Paving Co., 107 So.2d 205 (Fla.App.1958) [depression in street]; Chesson v. Nello L. Terr. Co., 236 N.C. 203, 72 S.E.2d 407 (1952) [uncompleted shoulder]; Hamra v. Helm, 281 S.W. 103 (Mo.App.1926) [excavation around a manhole]; Sheffer v. Schmidt, 324 Mo. 1042, 26 S.W.2d 592 (1930) [gap in roadway under construction]; Robinson v. Bybee, 299 S.W.2d 791 (Ky.App.1957) [oil used for resurfacing].

thority for the proposition, however, and we accord it no further notice.

■ The final contention by respondent for judgment on its after-trial motion rests upon an earlier adjudication of a petition by Columbia Asphalt Company for damage to the highway equipment and a counterclaim by Yellow Transit [Frankie Penn's employer] for damage to the tractor-trailer unit, wherein judgment on each claim was given Columbia Asphalt and denied Yellow Transit. The argument is made that this litigation, which also arose from the collision of June 30, 1965, adjudicated the negligence of Frankie Penn and now, on principles of res judicata, bars his recovery for personal injury. The respondent acknowledges that Frankie Penn was not a party to the prior adjudication but rests the argument of Penn's preclusion upon inconclusive precedent [Williams v. Kaestner, 332 S.W.2d 21 (Mo.App.1960)] and by general reference to a law review article [50 Iowa L.R. 27 (1964)] which advances the hypothesis that the issue litigated, not the identity of litigants, determines the scope of estoppel by judgment. The respondent neither develops a legal argument nor relates it the matrical facts of this litigation. We construe our rules of appellate procedure liberally to the end that appeals may be determined on their merits, but that policy does not contemplate that we assume the role of advocate and develop for a litigant an argument upon a legal principle barely stated. As to this point, respondent has failed to preserve anything for review. Morris v. Willis, 338 S.W.2d 777, 780 [6–8] (Mo.1960).

■ The respondent raises this cognate point: Yellow Transit as self-insurer paid workmen's compensation benefits to Frankie Penn and thereby became subrogated by statute to his cause of action for personal injury, a cause of action which— respondent argues—was a compulsory counterclaim by Yellow Transit in the action brought by Columbia Asphalt, but not asserted and therefore forfeited. Although § 287.150, RSMo 1969, V.A.M.S., subrogates an employer to the cause of action of the employee against a third person who had done him injury, the common law right of the employee to sue for his personal injury is not impaired by the statute [Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, 155 [3] (banc 1938)]; rather, the cause of action may be appropriated by either the employer or employee, but neither can compel the other to bring the action. Veninga v. Liberty Mutual Ins. Co., 388 S.W.2d 535, 537 [2–4] (Mo.App.1965). Accordingly, the failure of the employer to appropriate the statutory cause of action by counterclaim could not impair the exercise by the employee, Penn, of his common law cause of action. Furthermore, by the very terms of Rule 55.32, V.A.M.R., a claim is not a compulsory counterclaim if at the time the action was commenced it is the subject of a pending action. The suit by Penn for damages for personal injury was filed on October 26, 1966 and, from what we make of the record, predates the litigation between Columbia Asphalt and Yellow Transit.

We consider the contention that plaintiffs failed to make a submissible case on the submitted theory that respondent violated the statutory light regulations. The argument of respondent rests upon two predicates: (1) that the rules of the road did not apply to respondent's construction equipment and (2) there was no violation of the light requirement statute upon which submission was made. Closely related is the contention, raised as a separate point, that it was error to give Instruction No. 6 which imposed upon defendant the requirement to exercise the highest degree of care, a standard inapplicable because the construction devices used by defendant were not subject to the statutory rules of the road.

■ Every person who operates a motor vehicle on the highways of this state is required to exercise the highest degree of care. § 304.010, RSMo 1969, V.A.M.S. This duty of care extends to all incidents of operation of motor vehicles, including parking. Phillips v. Stockman, 351 S.W.2d 464, 478 [18] (Mo.App.1961). It is the premise of respondent, however, that the road roller and spreader were not motor

vehicles within the statute, and respondent seeks to sustain that premise by reference to § 301.010(30) which defines "vehicle" as a mechanical device on wheels "designed primarily for use on highways." Respondent confides in the wrong section. *A motor vehicle* is defined in subsection (17) of § 301.010 as : "any self-propelled vehicle not operated exclusively upon tracks, except farm tractors". The definitions of § 301.010 apply to the licensing and registration requirements as well as to the rules of the road promulgated by Chapter 304. The road roller and spreader were self-propelled—thus, "motor vehicles" within the definition of § 301.010(17)—and the highest degree of care was required for their operation. The decision in Ely v. Parsons, 399 S.W.2d 613, 616–617 [4, 5] (Mo.App. 1966) is directly in point. The court held that a self-propelled road grader was a motor vehicle required by the statute to be operated with the highest degree of care, a duty which extends not only to the usual lanes of travel but to the shoulder of the highway as well.

■ The respondent argues, however, that § 301.133, reasonably construed, discloses that the Legislature did not intend that the rules of the road should govern the movement of road equipment at a construction site, but only from one job location to another. That section merely exempts self-propelled construction equipment, even when being moved from job location to job location, from the requirements of licensing and registration, but expressly provides for compliance by such equipment "with all the other requirements of the law relating to motor vehicles". The single Missouri authority respondent cites on the proposition that ordinary care governs the operation of road equipment upon a public highway is Oglesby v. Vonder Haar Concrete Co., 372 S.W.2d 876 (Mo.1963), a decision which does not touch the issue. In that case, a truck in the process of delivering concrete to an excavation site on a highway was backing up under the direction of a construction worker when the excavation collapsed causing the death of

another worker. The question presented was the nature of the duty owed by the truck driver to the person working in the excavation and the court determined that duty to be the exercise of ordinary care. The facts did not involve the operation of road equipment, nor was the rationale the duty owed by the operator of such a vehicle to a traveller upon a public highway, nor did the claim of negligence rest on breach of common law or statutory rules of the road. We agree with Ely v. Parsons, *supra,* that there is no authority in our statutes for exempting self-propelled road machinery operated upon the highways of the state from the duty of the highest degree of care. See, 60 C.J.S. Motor Vehicles § 371, p. 698.

■ The question remains: whether the light regulations of Chapter 307 apply to the road equipment in operation by respondent at the time of the casualty. The light provisions of Chapter 307 do not apply to road machinery or road rollers except as otherwise made applicable in the chapter. § 307.025. The plaintiffs submitted their recovery by Instructions 3 and 4 which, in relevant part, required the finding that

First, defendant permitted its vehicles to be parked upon the highway or shoulder adjacent thereto between a half hour after sunset and a half hour before sunrise and there was not sufficient light to reveal any person or object within a distance to 500 feet upon the highway, and the vehicles so parked were not exhibiting a lamp or lantern visible from a distance of 500 feet . . .

The respondent argues once again that road equipment is not a vehicle and therefore not subject to the light regulations, but this time points to the definition of § 307.020(8) that: " 'vehicle' means every device in, upon or by which a person or property is or may be transported upon a highway". The introductory paragraph of § 307.020 expressly provides, however, that the definitions of that section apply to §§ 307.020 through 307.120, "unless the con-

text requires another or different construction". The context of § 307.115 which provides

> All vehicles, including agricultural machinery or implements, *road machinery, road rollers* . . . not in this chapter specifically required to be equipped with lamps, *shall be equipped during the times when lighted lamps are required* with at least one lighted lamp or lantern exhibiting a white light visible from a distance of five hundred feet to the *front of such vehicle and with a lamp or* lantern exhibiting a red light visible from a distance of five hundred feet to the rear, and such lamps and lanterns shall exhibit lights to the sides of such vehicle (Emphasis added.)

requires a different construction, one which subjected the road equipment used by respondent to the statutory light regulations.

The respondent complains that plaintiffs pleaded a violation of § 307.115 but fashioned their submission after § 307.-110 which specifies when and how parked vehicles shall be lighted. There is no merit to this contention. The application of § 307.110 to road rollers and road machinery cannot be clearly determined without reference to § 307.115. The plaintiffs were not required to plead each statute by rote. A pleaded allegation substantially in the language of the statute was held sufficient to invoke the statutory light regulations although the statutes were not pleaded specifically. Leek v. Dillard, 304 S.W.2d 60 64 [5] (Mo.App.1957). The pleadings of plaintiffs were sufficient to give notice of reliance for their cause of action on the light regulations for parked vehicles under §§ 307.110 and 307.115.

The respondent next contends, without support of authority, that § 307.115 intends to require lights on road machinery and rollers only when in movement on the travelled lanes of a highway at nighttime, and not when parked. No rational basis for such a distinction appears and, indeed,

the express statute discourages such a conclusion. The light regulations, § 307.020 through 307.120, are in pari materia and the components must be construed together. § 307.040 prohibits driving, moving or *parking* an unlighted vehicle on a highway during times when lighted lamps are required by the provisions of the chapter. Thus, the provisions of § 307.110(2), which require that vehicles parked at night on a highway or adjacent should be lighted, are made applicable [through §§ 307.040 and 307.115] to road machinery.

The first ground specified for the grant of new trial was for error in Instruction No. 2 which submitted the burden of proof [MAI 3.01 modified]. The written instruction given the jury was cast in the form for a single plaintiff with a single claim: "The burden is upon the plaintiff to cause you to believe the propositions necessary to support his claim against defendant". When this instruction was read to the jury, however, the trial court modified it orally, and changed the singular "plaintiff" to its plural form, and the pronoun "his" to "their" and "claim" to "claims" in order to reflect the separate claims of Frankie Penn and his wife, Patsy Mae. The plaintiffs urge that when considered with all the instructions and the evidence Instruction No. 2 was not misleading—that Instruction No. 2 itself refers to Instruction No. 5 [submitted by defendant on contributory negligence] which refers in turn to the "claims of both Frankie R. Penn and Patsy Mae Penn", and that the evidence is replete with mention of the separate claims of the plaintiffs. To these arguments respondents cite the rule that where there is deviation from an applicable MAI instruction, prejudicial error will be presumed unless the proponent of the instruction can show that no prejudice could have resulted from the deviation [Brown v. St. Louis Public Service Co., 421 S.W.2d 255, 259 [3] (Mo.banc 1967)], and also the rule that an appellate court will view the error assigned by the trial court for the grant of a new trial with a broad and liberal construction. Clevenger

v. Walters, 419 S.W.2d 102, 104 [1] (Mo. banc 1967).

■ A claim by the husband for his personal injury and the derivative claim by the wife for loss of services and consortium are distinct causes of action and, when brought in one proceeding, the burden of proof instruction [MAI 3.01] must be modified to reflect the joinder. MAI 35.05 [Illustrations—Instruction No. 7]. In our assessment of whether plaintiffs have established that no prejudice could have resulted from their failure to submit a written instruction properly modified for joinder of claims, we take into account that by the grant of new trial the trial court found such prejudice. Coit v. Bentz, 348 S.W.2d 941, 946 [8] (Mo.1961). It is a conclusion with which we do not agree. The only possible source of prejudice would be a confusion in the mind of the jury as to whether there were one or two separate claims and claimants, a possibility dispelled by the oral instruction of the trial court, by verdict-directors and forms of verdict which submitted the recovery of each plaintiff separately, by the contributory negligence instruction of defendant directed to "the claims of both Frankie R. Penn and Patsy Mae Penn", and by numerous trial references which established each of them as a plaintiff.

The case of Robben v. Peters, 427 S.W.2d 753 (Mo.App.1968), cited on this point by respondent, bears some resemblance on the facts but is of little relevance as a precedent. In that case, as in this, the action involved the claims of a husband for personal injury and of his wife for loss of consortium and, as here, the written burden of proof instruction was not modified to the necessary plural forms. The court did not reach consideration of the prejudicial effect of that omission, however, but granted a new trial for error in the plaintiffs' verdict-director. More nearly apposite is Bauser v. DeNoble, 412 S.W.2d 409, 412 [4, 5] (Mo.1967). In that case, the plaintiff wife was injured when the automobile she occupied, driven by her husband, collided with that of defendant under circumstances which rendered the negligence of the husband imputable to plaintiff. The plaintiff complained that an instruction which submitted that the burden of proof was on defendant to support the defense that *plaintiff* was contributorily negligent "as submitted in Instruction 6" was misleading and confusing in that the jury would understand "plaintiff" to refer to her whereas it was the conduct of her husband-driver which was intended for submission by the instruction. The court rejected the argument because [1.c 412]:

> The burden of proof instruction "referred the jury to instruction No. 6 which specifically directed the jury to the question of whether [the husband-driver] failed to keep a careful lookout. When read together, the two instructions left no room for confusion or misunderstanding."

We conclude as well that when read together, the burden of proof instruction [MAI 3.01], the contributory negligence instruction to which MAI 3.01 made specific reference, the separate verdict-directors and forms of verdict, left no doubt that Frankie R. Penn and Patsy Mae Penn each was asserting a separate claim upon which each had the burden of proof. In these singular and limited circumstances, the failure of the written instruction on burden of proof to conform to the plural form was harmless error.

■ The second ground specified by the trial court for the grant of new trial was the failure of Instruction No. 4, which directed a verdict for plaintiff Patsy Mae Penn, to require the jury to find "as a direct result of such injury" [to her husband] plaintiff Patsy Mae Penn sustained damage. Instruction No. 4 was after the model of MAI 31.04 and the critical language is the finding by paragraph Third that

> [A]s a direct result of such negligence plaintiff Frankie R. Penn was injured and plaintiff Patsy Mae Penn *thereby* sustained damage. (Emphasis added.)

The complaint of respondent is not that paragraph Third is an unauthorized deviation from MAI 31.04, but that MAI 31.04 is not applicable at all for the submission of the loss of consortium claim of a wife, but rather that MAI 35.06 [Illustrations—Instruction No. 5] is the proper pattern for submission and that, conformably, paragraph Third should have submitted

[A]s a direct result of such negligence plaintiff Frankie R. Penn was injured *and as a direct result of such injury* plaintiff Patsy Mae Penn sustained damage. (Emphasis added.)

The respondent attempts proof of this point by reference to the rubric of MAI 31.04: "Verdict Directing—Loss of Services or Medical Expenses of Dependent." The essential argument is that since by those very terms the subject of MAI 31.04 is the loss of services of a dependent, this model was not intended for use by Patsy Mae Penn for the loss of services of her husband because he was not dependent. That the rubric of MAI 31.04 imports no such limitation is clearly the meaning of Robben v. Peters, *supra*, 427 S.W.2d l.c. 756 [1], which approved the use of MAI 31.04 [then 26.04] for the loss of consortium claim of a wife and, in doing so, condemned a submission for failure to require the "thereby sustained damage" finding of paragraph Third of MAI 31.04. In Joly v. Wippler, 449 S.W.2d 565, [2] (Mo.1970), the Supreme Court adopted and followed the rationale of Robben v. Peters, *supra*.

■ It is the contention of respondent, however, that at the time Robben v. Peters, *supra*, was decided, MAI 36.05 [Illustrations—Instruction No. 5] and counterpart MAI 35.05 [Illustrations—Instruction No. 3], which first appeared in the 1969 edition of MAI, had not yet been promulgated, but must now be followed to the exclusion of other instructions on the subject. We have determined that MAI 31.04 is applicable for the loss of services and consortium, therefore plaintiff cannot be convicted of error for submission of her claim on that model. The effect to be given Illustrations is not specified by MAI and, as to the question before us, need not be determined, because *thereby*[3] in MAI 31.14 refers to the antecedent *injured* and is equivalent in meaning to *and as a direct result of such injury* in MAI 35.06, thus paragraph Third of each instruction requires the same finding.

The remaining points merely reassert, in different guises, questions already posed and answered.

The order of the trial court granting respondent a new trial is reversed and remanded to the trial court with directions that the verdicts and judgments for plaintiffs be reinstated.

All concur.

---

3. Webster's International Dictionary, Second Edition, defines "thereby": 1. By that; by that means; in consequence of that.