**Lucy N. PARSONS, Respondent,**

v.

**Finis E. NOEL, Cecil Noel, and William Noel, d/b/a Noel Brothers, Appellants.**

**No. 43844.**

Supreme Court of Missouri.

Division No. 1.

Sept. 13, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 11, 1954.

544

Roy F. Carter, Sprinkle, Knowles & Carter, Kansas City, for appellants.

Gayles R. Pine, Warrensburg, for respondent.

LOZIER, Commissioner.

Plaintiff-respondent (herein called plaintiff) sued defendants-appellants (herein called defendants) for the alleged wrongful death of her husband, Eugene F. Parsons. Plaintiff had a verdict for $15,000 and judgment was entered accordingly. Defendants appealed.

Defendants first allege error in the overruling of their motions for a directed verdict "because plaintiff's husband was guilty of contributory negligence as a matter of law." They also contend that plaintiff's Instruction 1 is "unsupported by the evidence."

"The burden of establishing plaintiff's contributory negligence falls upon the defendant unless it be established as a matter of law by plaintiff's evidence. With defendant carrying the burden of

proof, plaintiff's contributory negligence most frequently is a fact issue for the jury for the credibility of the witnesses is involved, especially where there is a conflict in the testimony, the same as is defendant's actionable negligence ordinarily a fact issue. Consequently, plaintiff's contributory negligence is for the jury unless reasonable minds can draw only the conclusion that plaintiff was negligent. The whole evidence and all legitimate inferences deducible therefrom are viewed in the light most favorable to plaintiff and taken as true while the evidence and inferences favorable to defendant are disregarded in ruling the issue of contributory negligence as a matter of law." (Citing cases.) Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, 499–500[1–4].

So stating the evidence: Parsons lived in Centerview, on Highway 58, a little over 2 miles south of the intersection of that highway with Highway 50. For five weeks before his death, he had worked in Warrensburg, on Highway 50, 6–7 miles east of the intersection. He drove his car to and from Warrensburg. On August 1, 1951, he was killed in a collision between his car and defendants' dump truck, driven by their employee, Simpson. Shortly after 8 p. m., Simpson, driving south on Highway 58, "ran out of gas" and stopped the truck 50 feet south of a bridge with its rear dual wheels on the "blacktop" pavement, i. e., in the west or southbound travel lane. The truck's lights were not on. Parsons, driving south with his headlights on, ran into the truck. Parsons' car left skid marks 100 feet long in the west travel lane. Parsons' car stopped in that lane. The truck was moved 25–30 feet into the west highway ditch.

The bridge has concrete abutments and its floor is about the width of the highway pavement, 18 feet. The highway shoulders north and south of the bridge are 5–6 feet wide. The highway is straight and level for 300 feet north of the bridge, then its slope (3–4%) is upward 700 feet to the crest of a hill, then downward over another bridge, then upward over another hill. South of the bridge, the highway is straight and level for 100 feet, then its slope (4–5%) is upward to an "overpass" at Centerview.

Charles, Pratt testified that he was a construction superintendent; his company had a field office in Centerview; defendants were sub-contractors of his company. He was driving north on Highway 58 with his headlights on; he had turned them on when he left the office; "it was getting pretty hard to see." While coming down the hill from the overpass, he first saw the truck on the west edge of the pavement about 800 feet away. Its lights were not on. It was "a bright object" in the rays of his headlights. "That was the way I knew it was a truck." He was going 35–40 m.p.h. About the same time, he saw Parsons' headlights come over the first hill north of the bridge. Parsons' car was then probably 1,000 feet north of the truck. It crossed the bridge just as Pratt was coming to a stop. Pratt stopped his car (still on the pavement, as he recalled) about 100 feet south of the truck. His headlights were still on. There was no car ahead of him in the east or northbound travel lane. About that time the collision occurred. The only vehicles on the highway in the vicinity were the truck, Parsons' and Pratt's. There was 12–13 feet of unobstructed pavement east of the truck.

Asked upon cross-examination how far he "could see an automobile or vehicle down the highway without the aid of his headlights that evening at the time of this occurrence," Pratt said, "Not far, or I wouldn't have had my headlights on. Q. How far? A. Do you want me to guess?" (Defendants' counsel did not press the matter.) Both Pratt's and Parsons' headlights "were normal so far as lighting up the highway" was concerned. Before the collision, he heard the roar of Parsons' motor; "it sounded like a Ford going at high speed to me." Pratt said that he saw that Parsons "was going to have to hit the truck or swerve around it and I pulled off the road so he wouldn't hit me." Pratt's "best idea" of Parsons' speed was 70 m. p. h. That was "a pretty

fair idea as to how fast he was going; no more than anyone else could tell in meeting a car." Pratt was "not a good judge of the speed of a car traveling toward you with its headlights on." Parsons' speed was reduced "very little" between the time Pratt first saw Parsons' headlights and the time of the collision. After the collision, Pratt saw a whiskey bottle in Parsons' car.

Allen Craig, Parsons' next door neighbor in Centerview, "heard the brakes squeal and the crash" in Centerview, "a little more than a quarter of a mile away." He drove to the collision site with his headlights on. "It was dark * * * around dusk, probably eight (o'clock)."

Mrs. Viola McMurtrey was driving north on Highway 58, accompanied by Mrs. Varene Crisp. Her car lights were on. She "did not see or observe" the truck as she came down the hill from the overpass. She first saw it when she "got close to the bridge." The truck was then north of the bridge, its headlights were not on and it was moving slowly, 10–15 m.p.h. She passed it north of the bridge. Then "I looked back through the rear view mirror when I saw he was creeping so slowly on the bridge and I wondered if he was having trouble because there were no lights. Q. No lights on the rear? A. I didn't see any lights at all. * * * It was around eight or shortly thereafter. It wasn't really dark, it was dusk, beginning to get dark." On the north side of the first hill north of the bridge she met Parsons. His headlights were on. She had no opinion as to his speed. She met no other cars coming from the north and no other car, coming from the south, passed her.

Mrs. Crisp corroborated Mrs. McMurtrey as to passing the truck, without its headlights on, and as to passing Parsons' car, with its headlights on. She had no opinion as to Parsons' speed.

When Sheriff Alex Nichols arrived at the scene, Parsons' car was in the west lane, about 50 feet south of the bridge. Simpson told him that he "had run out of gas, the truck died on the highway and he had no way of getting it off." The sheriff saw and talked to Parsons "around eight o'clock" at a liquor store on Highway 50 but Parsons was not drinking.

Defendants' evidence favorable to plaintiff was: The state highway patrol trooper said that, at the site after the collision, Simpson told him that he "estimated" that the collision occurred at 8:10 p. m. and that he "didn't have his lights on." Upon cross-examination, the trooper was asked: "At that time was it dark enough for the use of automobile headlights in driving a car on the highway?" Defendants' counsel objected "to that as calling for a conclusion and invading the province of the jury." The objection was. sustained. The trooper said that the seal on the whiskey bottle in Parsons' car had been broken and "there might have been a drink, but there wasn't much out of it."

Simpson testified that he stopped the truck with its rear on the pavement. On direct examination, he admitted that the truck's lights were not on. "The sun had gone down; I wouldn't say—I don't know whether or not it was dusk." He did not recall the McMurtrey car passing him. After he stopped the truck, he saw the lights of a car (Pratt's) coming from the south. There was one (Parsons') coming from the north; it was on the north side of the first hill north of the bridge. Simpson said he first "tried to flag" Pratt and then Parsons.

On cross-examination, Simpson "didn't know for sure" whether the truck lights were on. He had "flipped" the light switch at the Highways 50–58 intersection "as a safety precaution." He knew that the lights "were working" but not whether they "were on" at any time before the collision occurred. He had not observed whether either the truck's headlights or its rear lights were on. "It was just a matter of seconds" between the time he stopped the truck and the collision.

In Instruction 1 (hereinafter discussed), plaintiff submitted Simpson's negligence in leaving the truck on the pavement without its rear lights on. In Instruction, 4, defendants hypothesized that "at the time said

truck stopped that the automobile driven by deceased was one thousand feet to the north of said truck * * * and that plaintiff's husband was driving the automobile in which he was seated, at a high, dangerous and excessive rate of speed, to-wit, in excess of 60 miles per hour * * * and * * * that the truck mentioned aforesaid was visible to the plaintiff's husband for a sufficient distance so that in the exercise of the highest degree of care on his part, he could have slowed down the speed of his automobile, swerved the same or stopped the same, and could thereby have avoided running into the truck * * * and * * * that driving in the manner aforesaid by plaintiff's husband constituted negligence * * *" etc.

■ Defendants do not contend that plaintiff did not make a submissible case as to their negligence. Their first point is that Parsons was contributorily negligent as a matter of law. In support of that contention, they argue: "Reasonable minds cannot differ that a speed of 70 * * * miles per hour is certainly negligent under conditions existing at the time this accident occurred. The showing that the deceased made no effort to swerve his automobile and apparently reduced his speed very little is further indication of negligence."

However, while the question is close, we believe that it was for the jury to determine whether Parsons' alleged excessive speed was negligence "under the conditions existing at the time this accident occurred." There was evidence from which the jury could reasonably have inferred that Parsons' speed under those conditions was failure to exercise the highest degree of care and that he could have avoided the collision had his speed not been in excess of 60 m.p.h. as submitted by defendants. There was also evidence from which the jury could reasonably have found that, under all the circumstances, Parsons was not negligent.

In our view, the jury could reasonably have found that, when Parsons came over and started down the first hill north of the bridge, he was not aware of the presence of the unlighted truck in his travel lane

"blocking the highway at a place where he had a right to assume the way was clear and he could proceed with safety on his side of the pavement." Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, 500[5]. And see: Johnson v. Lee Way Motor Freight, Inc., Mo. Sup., 261 S.W.2d 95, 98[3].

Taking into account: The topography of the highway over which Parsons was traveling as he approached the collision site; that the pavement was black; that the truck was stationary on the traveled portion of the pavement; that neither the truck's headlights nor rear lights were on; and that there was a car coming from the south with its headlights on, the rays of which shone to the north beyond the standing truck, we think it was peculiarly within the province of the jury to say whether Parsons was negligent or whether, irrespective of his speed, he was negligent in failing to slacken, stop or swerve in time to have avoided the collision.

■ We cannot say that, under the instant circumstances, Parsons was contributorily negligent as a matter of law. "Conceding that it was his primary duty to have driven at such speed under such conditions as to have made it possible for him to avoid the collision after actual or constructive notice of his peril, we cannot say beyond peradventure of reasonable controversy that the record conclusively convicts him of neglect in this or any other respect, from which it follows that the issue of contributory negligence was properly one for the jury to determine." Mayne v. May Stern Furniture Co., Mo.App., 21 S.W.2d 211, 213[5]. Recently, this court said: "We continue to adhere to the view that one is not necessarily contributorily negligent as a matter of law solely because he drives at a speed which prevents his stopping within the distance his headlights reveal objects ahead of him; and that whether he is contributorily negligent as a matter of law depends upon all the circumstances in a particular case." Johnson v. Lee Way Motor Freight, Inc., Mo.Sup., 261 S.W.2d 95, 98 [2].

We rule that the issue of Parsons' contributory negligence was for the jury. Johnson v. Lee Way Motor Freight, Inc., supra; Thompson v. Byers Transp. Co., supra; Drakesmith v. Ryan, Mo.App., 57 S.W.2d 727, 729[1]. It follows that the trial court did not err in overruling defendants' motions for a directed verdict.

Defendants say: "It has frequently been held that the fact that an automobile ran into the rear end of another one raised an inference that the operator of the following automobile was negligent." They cite Hollensbe v. Pevely Dairy Co., Mo.App., 38 S.W.2d 273, 276[5–7]; Jones v. Austin, Mo.App., 154 S.W.2d 378, 381[6–8]; Rockenstein v. Rogers, 326 Mo. 468, 31 S.W.2d 792, 798[1–3]; Van Sickel v. F. M. Stamper Co., Mo.App., 198 S.W.2d 539, 543[2]. In the first three cases, it was held that whether the driver (of the following automobile) was negligent under the particular circumstances was a matter for the jury. In the Van Sickel case, the driver was held contributorily negligent as a matter of law.

The circumstances in the Van Sickel case were quite different from the instant circumstances. In that case: Both headlights and the seven red rear lights of the truck (parked on a blacktop pavement) were on; the truck was further illuminated by a light on the porch of a residence 25–30 feet away; the truck was loaded with light colored poultry coops filled with gray and white chickens; the road was level; the driver of the car had a clear and unobstructed view of the truck and did not slacken his speed; there was no car coming from the opposite direction and there was "ample room" on the highway for the approaching driver to pass the truck on the left. In the instant case: The truck's lights were not on and there was no other light shining on the truck; Parsons' view was obstructed by the hill north of the bridge and the "dip" north of that hill, and was probably impaired by the rays of Pratt's headlights after he (Parsons) started down the hill; Parsons did apply his brakes and slacken his speed; and, as we have pointed out, the jury could reasonably have inferred that he did not swerve to his left because of Pratt's car.

Defendants' other allegation of error is the giving of Instruction 1 at plaintiff's request. That instruction hypothesized, inter alia, that "at the time of said accident there was not sufficient daylight to render clearly discernible persons and vehicles on said highway for a distance of five hundred feet"; and that "defendants negligently failed then and there to have then and there on the rear of said dump truck a red light or lights then burning or lighted and casting a red light in the rear thereof so that said light could be seen a distance of five hundred feet from the rear of said truck." (See Sections 304.270(9) and 304.380, RSMo 1949, V.A. M.S.) Defendants say that "there is not one single word of testimony to support a submission that there was not sufficient daylight to render clearly discernible persons and vehicles on said highway for a distance of 500 feet."

We have heretofore noted the evidence as to the degree of light or darkness existing at collision time. Pratt, Craig, Mrs. McMurtrey and Parsons had their headlights on under circumstances indicating that the degree of darkness made them necessary. Pratt said, "I couldn't see far * * * it was getting pretty hard to see." Craig said "it was dark, * * * around dusk." Mrs. McMurtrey said "it was dusk, beginning to get dark." Pratt saw the truck when 800 feet away but only by the reflection of a "bright object" on the truck's front, in the rays of his headlights. There was no direct evidence (as to the results of experiments made under the exact conditions existing at the time of the collision) tending to show that the daylight was insufficient to render persons and vehicles clearly discernible for a distance of 500 feet. But, when we realize that that fact (sufficiency of daylight at any particular stage of dusk or darkness) is, of necessity, often subject to proof only by circumstantial evidence, we are of the opinion that the circumstances in evidence here were sufficient to support a

finding by the jury that there was not sufficient daylight to make persons and vehicles on the highway clearly discernible for a distance of 500 feet. It follows that the particular submission was supported by evidence and that the trial court did not err in giving Instruction 1.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.

All concur.