Darrell ROBERTSON et al., Plaintiffs-
Respondents,

v.

Charles Herman GROTHEER and Willard
Sikes, Defendants,

and

Earl Ray Carriger, Defendant-Appellant.

No. 9353.

Missouri Court of Appeals,
Springfield District.

March 10, 1975.

John R. Martin, Joplin, for defendant-appellant.

Karl W. Blanchard, Blanchard, Van Fleet, Robertson & Dermott, Joplin, John Markham, Parsons, Kan., for plaintiffs-respondents.

HOGAN, Judge.

This is an action for the wrongful death of Ruth Robertson, wife of plaintiff Darrell Robertson and mother of minor plaintiffs Pamela, Tony and Drew Robertson. The casualty out of which the suit arose involved four vehicles; the plaintiffs joined three of the drivers as defendants. Verdict and judgment were in favor of the plaintiffs and against defendants Grotheer and Carriger in the sum of $50,000, but in favor of defendant Sikes. Defendant Carriger has appealed, alleging error in the giving of plaintiffs' verdict-directing instruction and in the refusal of several instructions tendered by him. Consisting as it does of 28 exhibits of varying degrees of relevance and the testimony of 22 witnesses examined and cross-examined at length concerning the details of three collisions involving four vehicles, four drivers and eight passengers, the record is predictably diffuse, repetitive and in some respects obscure. The appellant's printed "summary" of the evidence comprises 58 pages of the 84-page brief he has filed here. Nevertheless space will be conserved and we shall confine ourselves to a summary of those facts and a consideration of those issues essential to an orderly disposition of the appeal. Bloomfield Reorg. School Dist. No. R–14 v. Stites, 336 S.W.2d 95, 97 (Mo.1960); Logsdon v. Duncan, 293 S.W.2d 944, 946[1] (Mo.1956).

The events with which we are concerned occurred on Highway 66 in Jasper County. The date was January 26, 1968, the time about 1:15 a.m. Highway 66 at the place here involved is a blacktop road running generally east and west. It is 24 feet wide with an eight-foot shoulder on the north side. North of the shoulder there is a ditch 18 inches deep and two feet wide. The north shoulder of the highway drops off abruptly into the ditch, and an embankment north of the ditch rises sharply to the north.

The series of accidents which ultimately resulted in Mrs. Robertson's death happened in and near the right-angled intersection of Highway 66 and another blacktop road referred to here as Central City Road. A westbound motorist approaching this intersection proceeds along a gradually descending slope and curve to the left; photographs and measurements received in evidence indicate that this downgrade commences, or the road "drops off", as appellant put it, about 500 feet east of the intersection. Both sides of the right-of-way have been cleared. Ninety-five feet west of the intersection, approximately 620 feet west of the "drop off" there is a metal highway sign in the ditch north of the shoulder. Mrs. Robertson was standing near this sign when she was struck by the appellant's car.

Before the appellant came on the scene, so to speak, a Pontiac (Mattos) had struck a Falcon (Grotheer) as the Falcon was turning left onto Central City Road. Almost immediately the Pontiac was struck from the rear by a Ford (Sikes). As a result of the first collision the Falcon went in the ditch at the northwest corner of the intersection; the Pontiac was in the north lane of Highway 66 about 50 feet west of the intersection. The impact of the second collision moved the Pontiac another 150 feet to the west; the Ford stopped 100 feet west of the intersection, also in the north or westbound lane. The first collision caused no serious personal injuries, but Mrs. Sikes, a passenger in the Ford, sustained severe facial lacerations as a result of the second. After the second collision the occupants of the Pontiac got out of the car and moved about, some on the highway, others on the north shoulder. Mrs. Robertson stood near the highway sign attempting to help Mrs. Sikes.

When these first two collisions occurred the appellant was still some distance east of the intersection. The witnesses gave widely differing accounts of the events which occurred and the conditions which existed as the appellant's vehicle approached the intersection, but there was evidence indicating that before the appellant arrived several westbound automobiles and at least one eastbound automobile drove around the wrecked vehicles, that other automobiles stopped near the intersection, and that the people driving or riding in those automobiles got out and moved around on the highway. Some testimony was received indicating that the area around the Pontiac and the Ford was illuminated to some degree, but there was also evidence that the intersection and the stalled vehicles were wholly unlighted and indiscernible to an approaching motorist. Although the appellant testified that he saw the Ford stopped in the road as he came over the "drop off" and quickly realized a dangerous situation lay ahead, he was unable to stop or pass to the left. Rather, the appellant turned his vehicle to the right, went in the ditch on the north side of Highway 66, ran into the highway sign, struck Mrs. Robertson and moved an additional 60 to 100 feet west before coming to a stop. Mrs. Robertson was dragged under the appellant's vehicle and died of the injuries she received.

Plaintiffs' case against the appellant was submitted on Instruction No. 7, which reads:

"Your verdict must be for plaintiffs and against defendant Carriger if you believe:

First, plaintiffs were the surviving spouse and minor children of Ruth Robertson, and

Second, defendant Carriger drove at a speed which made it impossible for him to stop within the range of his visibility, and

Third, defendant Carriger was thereby negligent, and

Fourth, such negligence either directly caused the death of Ruth Robertson or combined with the acts of defendant Grotheer and defendant Sikes to directly cause Ruth Robertson's death."

In this court, the appellant assigns error to the giving of Instruction No. 7 on two grounds. His first complaint is that MAI No. 17.19, which is incorporated in Instruction No. 7, represents a change in the substantive law. He directs our attention to the committee's comment[1] on MAI No. 17.19, the rulings cited by the committee,[2] and concludes that in formulating MAI No. 17.19 the Committee on Jury Instructions adopted a rule of law which had been rejected by our courts, thus exceeding its powers. This argument overlooks the fact that it is the Supreme Court, not its Committee on Jury Instructions, which adopts and promulgates approved jury instructions. In legal effect, the appellant's point is that the Supreme Court exceeded its rule-making power in adopting MAI No. 17.19.

■ The point is not properly preserved for review. If it had been, we doubt this court's competence to decide it. We have no jurisdiction of appeals which require construction of the constitution of this state, Mo.Const. Art. V, § 3, as amended 1970, V.A.M.S., and objections to approved jury instructions on the grounds asserted here have been treated as raising constitutional issues in the appellate jurisdictional sense. Stemme v. Siedhoff, 427 S.W.2d

---

1. Which reads: "While Missouri does not have the assured clear distance rule, it does allow jurors to find driving beyond the range of vision [sic] to be negligent. The existing instruction on excessive speed does not adequately cover this particular kind of misconduct."

2. Haley v. Edwards, 276 S.W.2d 153 (Mo. 1955); Johnson v. Lee Way Motor Freight, 261 S.W.2d 95 (Mo.1953); Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498 (1951).

461, 465 (Mo.1968). We need not pursue the jurisdictional question; even if no "construction" of the constitution is required, no parallel or similar claim of error was ever presented to the trial court, and the point is not before us. Bower v. Hog Builders, Inc., 461 S.W.2d 784, 798 (Mo. 1970); McConnell v. Pic-Walsh Freight Co., 432 S.W.2d 292, 301[17] (Mo.1968); Lands v. Boyster, 417 S.W.2d 942, 945[3] (Mo.1967).

■ The appellant further contends that Instruction No. 7 was not supported by the evidence; this point is in part tied to his vigorous assertion that the "assured clear distance rule" is not the law in this state. We may note preliminarily that it is no part of the function of the Court of Appeals to decide whether or not a particular principle should be included in the MAI formulary; that decision rests wholly and exclusively with the Supreme Court by virtue of the provisions of Mo.Const. Art. V, § 5. MAI No. 17.19 was not included in the original MAI; it was adopted by order of the Supreme Court dated February 10, 1969, and if Missouri did not have the "assured clear distance" or "range of visibility" rule before that, it has it now. In point of fact, our courts have recognized the range of visibility rule in one form or another since 1916. In Solomon v. Duncan, 194 Mo.App. 517, 523, 185 S.W. 1141, 1143[2] (1916), the St. Louis Court of Appeals was of the opinion that violation of the range of visibility rule was negligence per se. The following year in Roper v.

Greenspon, 192 S.W. 149, 157[7] (Mo. App.1917), a majority of the court was of the same opinion but there was a dissent and the appeal was certified to the Supreme Court. The Supreme Court, at least as we read its opinion, rejected the range of visibility rule as an absolute, fixed standard by which to measure negligence or contributory negligence, but gave no indication that it intended to reject the principle altogether. Roper v. Greenspon, 272 Mo. 288, 303-304, 198 S.W. 1107, 1111[7], 1918D, L.R.A. 126, 132 (banc 1917).[3] Modest independent research discloses at least 15 reported cases (there are others) in which our courts have clearly applied or considered the range of visibility rule in reaching their decision.[4] Our conclusion is, quite contrary to appellant's argument, that our courts have since 1917 recognized the range of visibility principle as a flexible standard of conduct by which negligence or contributory negligence may be measured. As is true in almost all other jurisdictions, our courts have rejected the range of visibility rule to the extent that it fixes an absolute standard of conduct, and a number of exceptions have been recognized. Johnson v. Lee Way Motor Freight, supra n. 2, 261 S.W.2d at 97–98[2][3]; Thompson v. Byers Transp. Co., supra n. 2, 362 Mo. at 46–47, 239 S.W.2d at 500; Penn v. Columbia Asphalt Co., supra n. 4, 513 S.W.2d at 685[6].

■ The only novel aspect of this appeal is that the range of visibility rule was not relied on as an affirmative defense; it

---

3. That *Roper* was so understood by the courts, see Sirounian v. Terminal R. Ass'n of St. Louis, 236 Mo.App. 938, 945, 160 S.W.2d 451, 455[5, 6] (1942); Ross v. Hoffman, 269 S.W. 679, 681[1–5] (Mo.App. 1925); Roper v. Greenspon, 210 S.W. 922, 924 (Mo.App.1919).

4. Rooney v. Lloyd Metal Products Co., 458 S.W.2d 561 (Mo.1970); Haley v. Edwards, supra n. 2, 276 S.W.2d 153; Parsons v. Noel, 271 S.W.2d 543 (Mo.1954); Johnson v. Lee Way Motor Freight, supra n. 2, 261 S.W.2d 95; Thompson v. Byers Transp. Co., supra n. 2, 362 Mo. 42, 239 S.W.2d 498; Bedsaul

v. Feeback, 341 Mo. 50, 106 S.W.2d 431 (1937); Sheffer v. Schmidt, 324 Mo. 1042, 26 S.W.2d 592 (1930); Penn v. Columbia Asphalt Co., 513 S.W.2d 679 (Mo.App.1974); Trantham v. Gillioz, 348 S.W.2d 737 (Mo. App.1961); Nickels v. Borgmeyer, 258 S.W. 2d 267 (Mo.App.1953); Arky v. Kessels, 262 S.W.2d 357 (Mo.App.1953); Sirounian v. Terminal R. Ass'n of St. Louis, supra n. 3, 236 Mo.App. 938, 160 S.W.2d 451; Love v. Kansas City, 118 S.W.2d 69 (Mo.App.1938); Powell v. Schofield, 223 Mo.App. 1041, 15 S.W.2d 876 (1929); Ross v. Hoffman, supra n. 3, 269 S.W. 679.

was asserted as a ground for recovery. We find no reported case from this jurisdiction in which a plaintiff has submitted his case upon the theory that the defendant drove at a speed which made it impossible for him to stop within the range of his visibility. We perceive no sound reason why violation of the range of visibility rule should not be asserted as a basis for recovery; there are theoretical and real differences between negligence and contributory negligence, but it may be said generally that violation of a standard of conduct which constitutes contributory negligence will also constitute negligence. Prosser, Torts, 418–419 (4th ed. 1971); Restatement (Second) of Torts § 464, pp. 507–509 (1965). It is unnecessary, however, and we decline to reduce the range of visibility submission to a number of elements which must be proved to authorize recovery. Given the variety of circumstances in which the range of visibility rule may be applicable and the numerous exculpatory conditions which may modify or preclude its application, it would be imprudent to do so. Neither shall we discuss the submissibility of the case in terms of the burden of proof. We do bear in mind that a party is entitled to submit his cause upon his own theory of the case, and that in submitting that theory he is entitled to the benefit of all the evidence not fundamentally contrary to his submitted theory. Welch v. Sheley, 443 S.W.2d 110, 118[6] (Mo.1969); Miller v. Riss & Co., 259 S.W.2d 366, 370–371[2, 3][4] (Mo.1953). Moreover, a jury is at liberty to believe all of the testimony of any witness or none of it, or accept it in part and reject it in part, just as it finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in the case. Capriglione v. Southwestern Bell Tel. Co., 376 S.W.2d 205, 206[2] (Mo. 1964); Kickham v. Carter, 314 S.W.2d 902, 905[1] (Mo.1958).

■ To recount the facts briefly, the proof taken most favorably to the result reached shows that the appellant was driving west along a thoroughfare, late at night. He was unaware that two collisions had occurred some distance ahead of him. We do not know how far east of the intersection the appellant was when the Ford struck the Pontiac, nor the precise interval which elapsed between the second collision and the time the appellant came over the "drop off" to the downgrade toward the intersection. Estimates of the time which elapsed between the second collision and appellant's arrival at the beginning of the downgrade varied from five to 20 minutes. In any event, the appellant was not bound to anticipate the presence of the Ford and the Pontiac or the pedestrians near the highway until those objects became clearly discernible. Parsons v. Noel, supra n. 4, 271 S.W.2d at 547; Thompson v. Byers Transp. Co., supra n. 2, 362 Mo. at 46–47, 239 S.W.2d at 500[5]. Appellant's duty to manage the speed of his vehicle so as to be able to stop within the range of his visibility arose when, in the exercise of the highest degree of care, he acquired actual or constructive knowledge that there was some probability of injury sufficiently serious that the ordinary person would take precautions to avoid it. Price v. Seidler, 408 S.W.2d 815, 822[12, 13] (Mo.1966); Zuber v. Clarkson Const. Co., 363 Mo. 352, 357, 251 S.W.2d 52, 55[6, 7] (Mo.1952).

■ The appellant's testimony was that his lights were on high beam as he approached the downgrade. His lights "picked up" the Ford when he was about 100 feet west of the "drop off", that is, 100 feet west of the place where the downgrade begins. By pretrial deposition, parts of which were read to the jury, appellant testified that he realized a dangerous situation existed when he first saw the Ford. He was then "right at" 500 feet east of the intersection. The intersection itself was shown to be 25 feet wide, and Mrs. Robertson and the Ford were some 100 feet west of the intersection. So, according to appellant's testimony, he saw and realized a possible hazard approximately 625 feet east

of the place where Mrs. Robertson was standing.

In addition, there was evidence that the area around the stalled vehicles was illuminated by sources other than the appellant's headlights. The driver of the Pontiac testified that after he collided with the Falcon he examined his car and "recall[ed] that [his] left headlight was still burning." A passenger in the Pontiac testified that the "dome" light and "tail" light on the Ford were burning. There was evidence that after the Ford struck the Pontiac and before the appellant arrived, several automobiles stopped near the intersection and the occupants of those vehicles "got out." There was testimony that even though the casualty occurred at night in the dead of winter, the atmosphere was clear and the visibility was good. The appellant said he saw headlights in the south lane of Highway 66 as he approached the intersection, but was not dazzled or blinded by them, and there was other evidence that the south lane was free of oncoming traffic. As previously stated, the photographs introduced in evidence show that the incline toward the intersection is moderate and regular, and that the right-of-way has been cleared. In short, the evidence considered most favorably to the plaintiffs justifies the inference that the appellant could or should have appreciated a probability of injury when he was over 600 feet east of Mrs. Robertson, and the evidence negates the existence of those conditions of excuse often discussed in the range of visibility cases—blinding headlights, hilly terrain or atmospheric conditions limiting the driver's vision.

■■ The appellant claims that plaintiffs were required to show it was impossible for him to stop after he appreciated the risk, and that in order to prove it was impossible for him to stop, plaintiffs should have adduced proof of the appellant's speed and the distance required to stop at that speed. We do not agree. Instruction No. 7 does not submit a negligent failure to stop, as if MAI No. 17.04 (using the alternative "stopped") had been substituted for MAI No. 17.19 as paragraph "second" of the verdict director. MAI No. 17.19 measures excessive speed in terms of the driver's ability to stop, rather than rapidity of motion or some other criterion, but the gravamen of the submission is excessive speed,[5] as the Committee's Comment upon MAI No. 17.19 indicates.[6] We concede that plaintiffs were required to show that excessive speed, and not mere inattention or distraction, was the cause of appellant's failure to stop,[7] but either excessive speed or excessive speed as the cause of an injury may be inferred from circumstances.[8] In this case, the appellant manifestly did not stop; if there is substantial evidence from which a jury could infer that he was unable to stop because of excessive speed, Instruction No. 7 was properly given.

■■ The evidence touching appellant's speed as he approached the intersection, taken most favorably to plaintiffs' submission, was that the appellant applied his

5. E. g., Demers v. Currie, 258 Iowa 507, 139 N.W.2d 464, 466[4] ((1966); Jordan v. Schantz, 220 Iowa 1251, 264 N.W. 259, 261 [3] (1935); Heeney v. Churchill, 154 Neb. 848, 50 N.W.2d 72, 76–77[6] (1951); Vorum v. Gorman, 97 Ohio App. 175, 124 N.E.2d 169, 173[3] (1953); 60A C.J.S. Motor Vehicles § 293(2), pp. 203–204 (1969).

6. The comment is: "The existing instruction on excessive speed [MAI No. 17.18] does not adequately cover this particular kind of misconduct." MAI p. 165.

7. Gelfand v. Strohecker, Inc., 150 F.Supp. 655, 661–662[6][7] (N.D.Ohio 1956); aff'd per curiam 243 F.2d 797 (6th Cir. 1957); Jordan v. Schantz, supra n. 5, 220 Iowa 1251, 264 N.W. at 261[3]; 2 Blashfield, Automobile Law and Practice § 105.29, p. 375 (3d ed. 1965).

8. Calvert v. Super Propane Corp., 400 S.W. 2d 133, 139 (Mo.1966); Rakestraw v. Norris, 478 S.W.2d 409, 416[11] (Mo.App.1972); Greenwood v. Vanarsdall, 356 S.W.2d 109, 112[1–3] (Mo.App.1962); Sirounian v. Terminal R. Ass'n of St. Louis, supra n. 3, 236 Mo.App. at 945, 160 S.W.2d at 454–455 [3, 4].

brakes as soon as he saw the stalled Ford ahead of him. The Ford was then approximately 600 feet away. The appellant—according to his version of the facts—maintained pressure on the brake, but discovered he could not pass to the left. He "pushed harder down on the brake", and swerved to the right. Appellant's vehicle then went in the ditch, hit the embankment on the north side of the highway, appellant "lost control of it a little bit" and turned directly west. Appellant conceded he broke the highway sign as he went in the ditch and "just a second or two" later struck Mrs. Robertson. Mrs. Robertson was dragged 60 to 100 feet west before appellant came to a stop. A jury could readily have found that excessive speed, not inattention or distraction, prevented the appellant's stopping within the range of his visibility.

The appellant further complains of the court's refusal to give tendered Instructions No. 21 and 22. Instruction No. 21 directed a verdict for the defendants if the jury found that Mrs. Robertson negligently failed to keep a careful lookout for approaching vehicles and that such negligence directly caused or contributed to cause her death. Instruction No. 22 reads as follows:

"Your verdict must be for defendants if you believe:

First, decedent Ruth Robertson, after she got out of the Mattos car, either:

failed to keep a careful lookout, or moved directly into the path of the Carriger

vehicle after she saw or should have seen that vehicle was in or turning into the ditch; and

Second, decedent's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and

Third, such negligence of decedent directly caused or directly contributed to cause her death.

The term 'negligence' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

■ If the evidence does not support the submission of Mrs. Robertson's failure to keep a careful lookout as a defense, there was no error in refusing either instruction, because the appellant was not entitled to have Instruction No. 22 given unless both defenses were supported by the evidence. Wolfe v. Harms, 413 S.W.2d 204, 209–210[1] (Mo.1967); Shelton v. Bruner, 449 S.W.2d 673, 676[1] (Mo.App. 1969). Consequently, we must first consider whether or not there was error in refusing Instruction No. 21; if not, there is no necessity to go further and consider appellant's contention that Mrs. Robertson jumped in front of his automobile "a second or two" before he struck her. As he says, the appellant is entitled to have the evidence considered in the light most favorable to him, disregarding plaintiffs' evidence unless it tends to support the submission. Jackson v. Skelly Oil Co., 413 S.W. 2d 239, 242[2] (Mo. banc 1967); Rickman v. Sauerwein, 470 S.W.2d 487, 489[1, 2] (Mo.1971).

Mrs. Robertson was a passenger in the Pontiac. After the Pontiac struck the Falcon and was in turn struck by the Ford, it came to rest 130 feet west of the Ford, which was stopped 100 feet west of the intersection. The occupants of the Pontiac determined that none of them had sustained serious injuries, got out of the car and walked back to the Ford to see if the occupants of that vehicle had been injured.

Mrs. Marie Sikes, who was riding in the Ford, sustained severe facial lacerations as a result of the collision betwen the Ford and the Pontiac. Mrs. Sikes indicated that she was "bleeding" and "hysterical". Mrs. Robertson was in training as a psychiatric aide at the Parsons State Hospital and Training Center at Parsons, Kansas. She obtained cloths from the driver of the Pon-

tiac, attempted to stanch the bleeding from Mrs. Sikes' face and remained with Mrs. Sikes for some time. Mrs. Robertson's position during the time she was attending to Mrs. Sikes was described as being "in the general area of [the highway] sign", "up toward the front" of the Ford and "on the shoulder." Mrs. Sikes saw the lights of appellant's car as it approached, and she ran "back against" the Ford, or up to the front end of the Ford. Mrs. Sikes moved before the appellant's vehicle went in the ditch and before it hit the highway sign. She did not see Mrs. Robertson move and did not see appellant's vehicle strike Mrs. Robertson.

Plaintiff Darrell Robertson was standing near his wife when she was hit. Mr. Robertson fixed his wife's position before appellant came along as being "west and north of the [highway] sign" and "slightly in the ditch". Mr. Robertson was "just west and a little bit north of the sign." Mr. Robertson was emphatic in stating that his wife was standing in the grass, "off down in the grass", as he put it, and not on the gravel part of the north shoulder. On direct examination Mr. Robertson said, "I was standing west of the sign looking west and my wife grabbed me by the left hand . . . and just spun me around and as she spun me around I looked to the east and that is when the car hit the sign." Mr. Robertson was about six feet from the sign then, and appellant's vehicle struck him on the right leg above the knee and "knocked [him] backwards." Mr. Robertson could not recall what happened afterward, "except after the [appellant's] car stopped."

Defendant Grotheer also saw the appellant's vehicle strike Mrs. Robertson. He was the driver of the Falcon. He was thrown from his car when the Pontiac collided with it, and was unconscious for a time. He regained consciousness and moved about, standing within five or ten feet of the Ford. He saw the appellant approaching, still east of the intersection, ran across the ditch, up on the embankment, and escaped injury. Grotheer "esti-

mated" appellant's speed to have been 65 miles per hour when he first saw the appellant; appellant was then in the north lane of Highway 66; appellant stayed in that lane as he went through the intersection and started "angling" to the northwest between the intersection and the highway sign. As the appellant passed Grotheer, appellant's speed was "about 45 or 50". Grotheer estimated further that appellant's vehicle ran in the ditch a distance of 75 feet before it struck Mrs. Robertson.

 The appellant's insistence that Instructions No. 21 and 22 should have been given raises several collateral issues, but we shall not burden this opinion with further abstract discussion. Mrs. Robertson was not standing or working in the traveled part of the highway, nor did she, in the most sanguine view of the evidence, have 30 seconds to react to apparent danger, as did the plaintiff in Rickman v. Sauerwein, supra, 470 S.W.2d 487, nor was her situation comparable to that of the plaintiff pedestrian in Morris v. Duker, 414 S.W.2d 77 (Mo.1967), and neither of those two precedents is controlling. Assuming that Mrs. Robertson was under a duty to maintain a continuous lookout for vehicles approaching from the east, and further assuming that she did not do so, it is difficult if not impossible to see how such lookout would have enabled Mrs. Robertson to predict that the appellant would go off the highway to the north, momentarily lose control of his car, "straddle" the ditch and pose an immediate threat 75 feet to the east of the place where she was standing. Such considerations aside, Mrs. Robertson's contributory negligence as a proximate cause of her death was an affirmative defense which the appellant was required to "plead and prove", § 537.085, RSMo 1969, V.A.M.S.; Davenport v. Wabash R. Co., 435 S.W.2d 641, 643[2] (Mo. banc. 1968), and in order to justify giving either Instruction No. 21 or 22, the appellant was required to produce substantial evidence that Mrs. Robertson could have acted in some manner so as to avoid injury. Miller v. St. Louis Public

Service Co., 389 S.W.2d 769, 772[4] (Mo. 1965). This requirement included a showing of the existence of sufficient time and distance, considering the movement and speed of appellant's vehicle, to enable Mrs. Robertson to take effective action in avoidance. Zalle v. Underwood, 372 S.W. 2d 98, 102[1–3] (Mo.1963); Page v. Baxter, 503 S.W.2d 32, 34[2][3] (Mo.App. 1973); Stegall v. Wilson, 416 S.W.2d 658, 662[2–4] (Mo.App.1967). Giving appellant the benefit of the happiest and most favorable combination of circumstances (from his point of view), Mrs. Robertson would have seen his vehicle 75 feet to the east of her, in the ditch, going 45 miles per hour. We know judicially that an automobile going 45 miles per hour travels approximately 66.15 feet per second. It would have required ¾ second for Mrs. Robertson to appreciate her peril and react. In that time appellant would have moved 49.-61 feet closer to Mrs. Robertson; the remaining 25.39 feet would have been covered in less than ½ (actually .38) second. Mrs. Robertson did not have sufficient time to take effective action, and Instructions No. 21 and 22 were properly refused.

As a final point, the appellant asserts the court erred in refusing Instructions No. 23 and 24, but no authority, foreign or local, general or specific, is cited in support of this point. Rule 84.04(d), V.A. M.R., like its predecessor, former Rule 83.-05(a)(3), contemplates the citation of *some* authority to the specific point made. We have heretofore refused to become advocates for the appellant by examining and reviewing claims of error which are not supported by any citation of authority and we refuse to do so in this case. See In re Estate of James, 459 S.W.2d 536, 540–541 (Mo.App.1970).

We find no error materially affecting the merits of the action and accordingly the judgment is affirmed.

BILLINGS, C. J., and STONE and TITUS, JJ., concur.

FLANIGAN, J., took no part in the consideration or decision of this case