Donna L. CLARK, Appellant,

v.

CITY OF ST. JOSEPH, Missouri, a Municipal Corporation; St. Joseph Light & Power Company, a Missouri Corporation; and Susan K. Baier, Respondents.

No. WD 31687.

Missouri Court of Appeals, Western District.

Oct. 1, 1980.

Kranitz & Kranitz, P. C., St. Joseph, for appellant.

Richard J. Yocum, St. Joseph, for City of St. Joseph.

Charles S. Wilcox, Wilcox, Houts & Douglass, St. Joseph, for St. Joseph Light & Power Co.

Suzanne Bocell Bradley, Brown, Douglass & Brown, St. Joseph, for Susan K. Baier.

Before TURNAGE, P. J., and SHAN-GLER and MANFORD, JJ.

SHANGLER, Judge.

The plaintiff appeals from an adverse judgment after verdict by a jury on a claim for personal injury from a collision between two automobiles. The plaintiff complains that the submission of contributory negligence was error as a matter of law.

The collision occurred in the intersection of Third and Edmond Streets in St. Joseph, Missouri. The plaintiff and the defendant drove into an intersection obscured by steam from a manhole. The plaintiff came from the south on Third Street and the defendant came from the north on Third Street. The plaintiff intended to continue through the intersection north on Third, and the defendant intended to turn east [left] from Third onto Edmond. The plaintiff [and her daughter–passenger] first no-

ticed the condition of the intersection from a block away after the trailer–truck they followed turned off and opened the intersection to view. The plaintiff described the atmosphere variously [to the police] as "so thick you couldn't see" and, [in testimony] as "very dense." The policeman witness described the view of the intersection as "entire[ly] obliterated," except when cleared by periodic gusts of wind. There was no doubt that, whatever the momentary dispersal of the cloud vapor, when the plaintiff entered the intersection, the east lane she travelled was entirely obscured by steam. Nor was there doubt that, when the defendant entered the intersection from the north and commenced the turn to the east, her path of travel was totally obscured. The evidence of the plaintiff was that she could see a half–car length ahead. The evidence agrees, however, that neither driver saw the other before collision.

The impact was in the northbound lane of Third Street. The front end of the defendant car and the left front of the plaintiff car came into collision. The plaintiff was then entirely in the northbound lane and the left side of the defendant was halfway into that same lane. The defendant testified that she stopped at the intersection because she could not see to the south. After time–so she surmised–for any possible traffic to clear, she entered the intersection to turn onto Edmond to the east at two to three miles per hour and collided with the plaintiff. The movements of the plaintiff car are not as certain. The plaintiff told the police at the scene that she slowed and then the collision ensued. At trial, she explained that she stopped before entrance into the intersection, but on cross–examination testified she merely shifted the manual transmission before that maneuver. The plaintiff gave her estimate [by answer to interrogatory] that at collision her speed was 15 miles per hour and [on direct examination] three to four miles per hour.

The court submitted Instruction 6 [on the model of a modified MAI 32.01]:

Your verdict must be for defendants, if you believe:

First, plaintiff drove at a speed which made it impossible for her to stop within the range of visibility, and

Second, plaintiff was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The plaintiff contends the submission was error because the law imposes no duty to anticipate the defendant would fail to yield the right–of–way and turn left into her lane of travel, so the movement of the plaintiff vehicle into the cloud of steam, conclusively, was not the proximate cause of the collision.

The duty of a motorist to drive at a speed which renders possible a stop within the range of visibility is a fixed rule of law. *Haley v. Edwards*, 276 S.W.2d 153, 158[1] (Mo.1955); MAI 17:19. The gist of the liability is excessive speed. *Robertson v. Grotheer*, 521 S.W.2d 452, 458[8, 9] (Mo. App.1975). Thus, the requirement that a motorist operate the vehicle within the range of visibility merely expresses the more inclusive duty to avoid collision from excessive speed as an incident of the highest degree of care. *Dorrell v. Moore*, 504 S.W.2d 174, 179[7–9] (Mo.App.1973); § 304.-010.1, RSMo 1978. The cavil of the plaintiff that the intrusion of the defendant into the northbound lane and the failure to yield–and not the movement of the plaintiff into the shrouded intersection–was the proximate cause of the collision rests on the circumstance that the plaintiff car retained a true course despite the impaired visibility. The duty of a motorist does not evolve *post hoc*, as that argument suggests. Rather, the ultimate test of liability is whether some kind of injury is reasonably foreseeable from the conduct of the actor. If foreseeable, then the conduct becomes the proximate cause of the injury. *Price v. Seidler*, 408 S.W.2d 815, 822[11] (Mo.1966); *Foley v. Hudson*, 432 S.W.2d 205, 207[2] (Mo.1968). In context, therefore, the duty to manage the speed of a vehicle so as to enable a stop within the range of visibility arises when

the motorist knows, or in the exercise of the highest degree of care should know, that injury will result unless precaution is taken to avoid it. *Robertson v. Grotheer*, supra, l.c. 457[6]. A determination of excessive speed depends upon all the circumstances—the condition of visibility among them. *Dorrell v. Moore*, supra, l.c. 179[7–9].

The contributory negligence Instruction 6 submitted the theory of the case of the defendant. That instruction rests for validity on all the evidence in the case not fundamentally incompatible with the theory of the defendant. We assess the adequacy of that evidence on the assumption that all reasonable inferences favorable to the defendant [and submission] are true. *Welch v. Sheley*, 443 S.W.2d 110, 118[6–8] (Mo. 1969). Our review determines, therefore, whether on that view of the evidence, the jury could find issue submitted. *Gruhala v. Lacy*, 559 S.W.2d 286, 289[5, 6] (Mo.App. 1977).

The evidence taken most favorably to the submission shows that the plaintiff became aware of the condition of the intersection when a block away, had opportunity to turn onto Edmond rather than continue on a road obliterated by fog, but "saw no reason to." The plaintiff moved into the intersection at about three to four miles per hour and, with a visibility ahead of half–car length, accelerated to a speed of 15 miles per hour to the point of collision. The defendant entered from an opposite direction, confronted an intersection totally enveloped in a cloud of vapor, stopped, but resumed movement by a left–hand turn at two to three miles per hour and came into collision almost immediately. The proper test of speed as a proximate cause of a collision is whether speed prevented the operator from avoidance of the collision. *Buzbee v. Greyhound Lines, Inc.*, 467 S.W.2d 933, 935 (Mo.1971).

On the evidence, a jury could have concluded that the entry of the automobile into the shrouded intersection at a speed of three to four miles per hour accelerated to 15 miles per hour with visibility limited to a half–car length ahead prevented the plaintiff from an ability to avoid collision and injury. That is, the jury could have found that all the circumstances considered—the speed, visibility, existence of an intersection among them—the plaintiff, in the exercise of the highest degree of care, should have foreseen the danger of injury from such a movement into the befogged roadways, that notwithstanding, the plaintiff entered the intersection and injury resulted. The evidence was sufficient for the Instruction 6 submission that the plaintiff drove at a speed which rendered a stop within the range of visibility impossible and that the conduct posited was negligent and caused her injury. *Windsor v. McKee*, 22 S.W.2d 65, 67[5] (Mo.App.1929). To justify her conduct, the plaintiff argues the principle that the law does not require the impossible nor assess contributory negligence for "inability to see through impenetrable objects or [to] bend vision around them." That aphorism relates to a line of sight to an intersection unavoidably impaired by buildings and other fixed structures [*Holtmeyer v. Scherer*, 546 S.W.2d 29, 32[6–9] (Mo.App.1976)] and not to a condition on the roadway, itself, which presents a hazard to safe travel unless avoided. There was no evidence of urgency or necessity to justify the plaintiff to expose herself to the risk of a foreseeable injury. The safe course was to proceed onto Edmond and avoid the intersection hazard altogether—but the plaintiff "saw no reason to." The citation of *McConnell v. Pic-Walsh Freight Company*, 432 S.W.2d 292 (Mo.1968) does not sustain the plaintiff in such a contention under the evidence.

The judgment is affirmed.

All concur.