George A. ARNONE, Appellant,

v.

Goldie R. HESS, Respondent.

No. WD 37802.

Missouri Court of Appeals,
Western District.

Jan. 13, 1987.

Steven D. Wolcott, Gladstone, for appellant.

Thomas E. Allen, Liberty, for respondent.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

GAITAN, Presiding Judge.

This is an action arising from an automobile collision in which the plaintiff-appellant, George Arnone, sought to recover damages for personal injuries and property damage from defendant-respondent, Goldie Hess. The jury found for plaintiff and awarded him Zero Dollars ($0.00) for personal injuries and One Hundred Dollars ($100.00) for property damage. The jury then apportioned forty percent (40%) fault to plaintiff and sixty percent (60%) fault to defendant. The trial court entered judgment accordingly.

Plaintiff appeals alleging that there was insufficient evidence to support Instruction No. 9. Instruction No. 9 reads in pertinent part as follows:

You must assess a percentage of fault to plaintiff if you believe:
First, either:
Plaintiff failed to keep a careful lookout, or
Plaintiff drove at an excessive speed, or
Plaintiff drove at a speed which made it impossible for him to stop within the range of his visibility, and
\* \* \* \* \* \*

The judgment of the trial court is affirmed.

On April 22, 1982, plaintiff and defendant, as operators of motor vehicles, were involved in a collision at the intersection of North Oak Street Trafficway and Northeast 76th Street in Gladstone, Clay County,

Missouri. North Oak Trafficway is a four lane street running north and south without median. North Oak Trafficway forms a "T" intersection with 76th Street, which runs only to the east of North Oak. The intersection is controlled by a traffic light. The defendant was southbound on North Oak in the inside lane and was turning left onto 76th Street, while plaintiff was northbound on North Oak. Plaintiff's vehicle was damaged in the front and hood, and defendant's vehicle was damaged in the right front fender area. Plaintiff's claim for property damage was limited to the $100.00 deductible on his automobile insurance policy. Plaintiff also claimed to have suffered a back injury.

Both parties called eyewitnesses to the accident to testify. Nancy McEntire, testifying for defendant, stated that she was northbound on North Oak in the inside lane and was stopped for the red traffic signal at 76th Street, when the events leading to the collision commenced. According to Mrs. McIntyre, her vehicle was the first vehicle in the inside lane, with four other vehicles stopped behind her in the same lane.

Mrs. McIntyre stated she failed to notice when the traffic light had changed to green for her direction of traffic until a motorist behind her sounded a horn. At that time, Mrs. McIntyre noticed the defendant's car was commencing a left turn from the inside southbound lane of North Oak to the eastbound lane of 76th Street. Mrs. McIntyre looked in her rearview mirror and turned and looked behind her and determined that the northbound outside lane of North Oak was clear of traffic. Mrs. McIntyre then waved to defendant to complete the turn across both northbound lanes of North Oak Trafficway.

Mrs. McIntyre stated that she then heard the roar or sudden acceleration of an engine behind her. Upon again looking in her rearview mirror, Mrs. McIntyre observed plaintiff's vehicle, suddenly swerve from the inside northbound lane of North Oak into the outside lane and proceed into the intersection, colliding with defendant's ve-

hicle. According to Mrs. McIntyre, when the plaintiff made this lane change the defendant's vehicle was approximately one-half to two-thirds through its left-hand turn. Mrs. McIntyre also stated that she was driving a station wagon with nothing in the back to obstruct her view and that her vehicle had no significant blind spot.

David Sherer testified for plaintiff that he was going northbound in his automobile in the inside lane of North Oak approaching the Northeast 76th Street intersection. He observed plaintiff's vehicle in the outside lane of North Oak and overtook plaintiff's car about one block south of Northeast 76th Street. As they approached the intersection, Sherer came to a stop, waiting for the cars ahead of him to begin moving through the intersection. Sherer observed plaintiff's car proceed on in the outside lane towards the intersection. Sherer stated that plaintiff never changed lanes, but remained in the outside lane. Sherer further testified that plaintiff hit his brakes and appeared to go to the right to avoid the collision. Sherer testified that he first saw defendant's vehicle when it was in the "oncoming lane", and that plaintiff's vehicle was three to four car lengths south of the intersection at that time.

Plaintiff testified that he was proceeding north on North Oak in the outside lane at approximately 35 miles per hour. There were no cars in the lane in front of him and he observed that the traffic signal was green in his direction. Plaintiff testified that he was one to three car lengths from the intersection when he first observed defendant's vehicle making a left turn at the intersection.

At the request of the defendant's attorney, the trial court took judicial notice of the conversion of speeds of 35 and 30 miles per hour to 51 and 44 feet per second respectively. The court also took judicial notice that the average reaction time for perception of danger to response by applying the brakes on moving vehicles is ¾ of one second.

We find that the trial court properly submitted Instruction No. 9 because there was

sufficient evidence for the jury to find that plaintiff failed to keep a proper lookout, operated his vehicle at an excessive speed, and/or operated his vehicle at a speed which made it impossible for him to stop within the range of his visibility.

## FAILURE TO KEEP A CAREFUL LOOKOUT

■ Plaintiff cites *Thurman v. Anderson,* 693 S.W.2d 806 (Mo. banc 1985) as authority for his position that the trial court erred in submitting Instruction No. 9. There the court held there was insufficient evidence to support a contributory negligence instruction on failure to keep a careful lookout. The court in *Thurman,* citing *Zalle v. Underwood,* 372 S.W.2d 98 (Mo. 1963), stated at 807:

> In *Zalle,* it was held that, to support a contributory negligence instruction on failure to keep a careful lookout, the evidence must support a finding that a driver had the means and ability to have avoided a collision. Means and ability include sufficient time and distance considering the movement and speed of the vehicles. There was no evidence to show that either party saw the other. There was no expert evidence on how far a car will travel at various speeds before stopping. Nor was there evidence to show the distance between the vehicles at the material times.

At 808, the court held:

> In order to show contributory negligence in failure to keep a careful lookout, defendant must establish her position in the road, and must then demonstrate that plaintiff, exercising the highest degree of care, could have avoided the accident.

With the above-referenced language in mind, we shall now examine the case at bar.

The jury could have found from Mrs. McIntyre's testimony that plaintiff was completely stopped in the inside northbound lane when the traffic signal turned green for northbound traffic; that plaintiff became impatient with the delay; that plaintiff failed to see defendant's vehicle proceeding into a left-hand turn within the intersection; and that plaintiff abruptly changed lanes and accelerated into the intersection at a time when defendant's vehicle should have been clearly visible, having completed one-half to two-thirds of its turn. With no other traffic in the outside lane, plaintiff should have seen defendant's vehicle once the plaintiff changed lanes and before he proceeded into the intersection.

In considering whether an instruction is supported by the evidence, the offering party is entitled to the most favorable view of the evidence and all favorable inferences drawn therefrom. *Welch v. Sheley,* 443 S.W.2d 110, 118 (Mo.1969); *Berry v. Harmon,* 329 S.W.2d 784, 789 (Mo.1959); and *Stanfill v. City of Richmond Heights,* 605 S.W.2d 501, 502 (Mo.App.1980).

Thus, the jury could have accepted Mrs. McIntyre's version of the accident and concluded that had plaintiff "maintained a careful lookout ahead and laterally as required in the exercise of the highest degree of care he could have seen" the vehicle operated by defendant and taken preventative measures. *See Marshall v. Bobbitt,* 482 S.W.2d 439 (Mo.1972).

## EXCESSIVE SPEED

■ Plaintiff relies upon his assumption of a clear way through the intersection and claims that his speed could not be considered excessive since it was at or within the 35 m.p.h. limit. The assumption of a clear way, however, continues only until a reasonable person, exercising the highest degree of care, is placed on notice that his assumption is no longer warranted. *Wolfe v. Harms,* 413 S.W.2d 204, 210 (Mo.1967). Also, the existing conditions determine whether speed is excessive and a driver can be guilty of excessive speed even though his speed is within the lawful limit. *Powell v. Watson,* 526 S.W.2d 318, 326 (Mo.App. 1975); *Rakestraw v. Norris,* 478 S.W.2d 409, 415 (Mo.App.1972).

According to plaintiff's testimony, he was northbound in the outside lane of North Oak at 35 m.p.h. When he was

approximately one block south of the intersection, the traffic light was green for northbound traffic. Plaintiff saw that, despite the green traffic signal, the northbound traffic in the inside lane remained stopped at the intersection. Plaintiff admitted that he did not know why traffic remained stopped, but stated that he nonetheless proceeded past the stopped vehicles into the intersection. Plaintiff did not reduce his speed until he was within two car lengths, or approximately twenty-eight feet of the defendant's vehicle.

"The proper test of speed as a proximate cause of a collision is whether the speed prevented the driver from avoiding the collision." *Marshall v. Bobbitt*, 482 S.W.2d 439, 442 (Mo.1972). "Excessive speed is a relative matter, and whether speed is excessive ordinarily depends on the conditions of the highway and surrounding circumstances." *Wolfe*, 413 S.W.2d at 210.

Plaintiff observed that traffic in the inside northbound lane remained stopped south of the intersection despite the green traffic signal which he could see one block before the intersection. Therefore, the jury could find from the evidence that as far as one block south of the intersection the plaintiff was on notice that someone or something occupied the intersection and created a forseeably dangerous situation. In view of those conditions, the jury could have found that plaintiff's speed of approximately 35 m.p.h. during his approach and entry into the intersection was excessive.

### IMPOSSIBLE TO STOP WITHIN RANGE OF VISIBILITY

■ Plaintiff was aware that, despite the green light, northbound traffic in the inside lane of North Oak remained stopped south of the intersection, and plaintiff admitted that he could not see why traffic was stopped because "the intersection was obstructed." Nonetheless, plaintiff proceeded past those stopped cars and into the intersection "at 35 m.p.h. or somewhat less."

"The duty of a motorist to drive a speed which renders possible a stop within the range of visibility is a fixed rule of law." *Clark v. City of St. Joseph*, 606 S.W.2d 506, 508 (Mo.App.1980). The instant case is similar to *Clark*. In *Clark*, the plaintiff observed approximately one block from the intersection that his view was obstructed by steam or fog escaping from a manhole. Nonetheless, Clark moved into the intersection at about 3 to 4 m.p.h. and accelerated to 15 m.p.h. at the point of collision. The court held "[t]he evidence was sufficient for instruction 6 submission that the plaintiff drove at a speed which rendered a stop within the range of visibility impossible and that the conduct posited was negligent and caused her injury." *Clark*, 606 S.W.2d at 509. We believe there was also sufficient evidence to support this portion of Instruction No. 9 in this case.

The judgment of the trial court is affirmed.

All concur.